(Rev. 5/05)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) James St. Louis
(Name of Plaintiff) (Inmate Number)

Delaware Correctional Center
1181 Paddock Rd Smyrna De 19977
(Complete Address with zip code)

(2) ______
(Name of Plaintiff) (Inmate Number)

______
(Complete Address with zip code)

(Each named party must be listed, and all names must be printed or typed. Use additional sheets if needed)

06-682
(Case Number)
( to be assigned by U.S. District Court)

vs.

(1) Officer ~~James~~ Michael Wilson
(2) Lauren Hatcher
Melanie Withers
(3) Buster Richardson et al.
(Names of Defendants)

(Each named party must be listed, and all names must be printed or typed. Use additional sheets if needed)

CIVIL COMPLAINT

✓ Jury Trial Requested

FILED
NOV - 6 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I. PREVIOUS LAWSUITS

A. If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

St. Louis v Wilson et al 1:05-cv-38 Robinson

St. Louis v Morris et al 1:06-cv-236 Robinson

St. Louis v Heverin et al 06-641-SLR Robinson

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution? ~~• • Yes • • No~~ N/A

B. Have you fully exhausted your available ~~administrative~~ court remedies regarding each of your present claims? •✓• Yes • • No

C. If your answer to "B" is Yes:

1. What steps did you take? failed post Conviction Relief addressing issue in Superior Court & Supreme Court
2. What was the result? Superior procedurally Barred me Supreme affirmed 3/2005

D. If your answer to "B" is No, explain why not: __________

## III. DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: James Michael Wilson

Employed as Laurel Police Dept. at Laurel Delaware

Mailing address with zip code: Laurel Delaware

(2) Name of second defendant: Lauren Hatcher

Employed as investigator for Family Services at in Georgetown

Mailing address with zip code: Family Services Georgetown De.

(3) Name of third defendant: Melanie Withers

Employed as prosecutor at Prosecutor Office

Mailing address with zip code: Prosecutor Office Georgetown De.

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

Buster Richardson interviewer for CAC Child Advocacy Center Milford Delaware

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.

2. see attached and exhibits

3.

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. Defendant is asking those named and all those Court feels liable in the official and personal capacity where through the active or inactive actions be held for "pain and suffering" a compensatory damages also punitive damages and nominal damages. Hold those accountably

2. for mental and emotional injury. Defendant asks for sanctions against individuals and Departments they work for to be held accountable. Defendant ask to an injunction forcing a closer of CAC Center until they can prove with reliable inspections

3. and disclosures their ability to follow Delaware laws and statues and to review of possible prior case to insure those defendants did not get the same treatment of violation of Constitutional Rights.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 2 day of November, 2006.

James St. Louis
(Signature of Plaintiff 1)

(Signature of Plaintiff 2)

(Signature of Plaintiff 3)

## Statement of Argument

The question to be decided is who will be held responsible and to determine the compensation and punishment for violating State Statue and State Constitution which in turn shows violations of forth, sixth and fourteenth Amendment rights.

## Statement of Facts

In September of 2001 defendant was arrested and placed in custody at DCC in Georgetown. Two days after arrest alledged victum after numerous interviews was taken to Milford Hospital and questioned per interviewer of the Child Advocate Center. This interview, video taped, was taken without knowledge of defendant or his defense counsel. Those present (see exhibit A,) do not conform with Delaware Statue 3511. All procedures followed were not authorized by Statue 3511 Thus violating defendants forth, six and fourteenth Amendment rights and State of Delaware statue and Constitutional rights. (see exhibit B)

"Don't be so busy doing good that we neglect what is right"

## Arguements

Suggestivity is the "one factor which more than anything else devatates memory and plays havic with our best intended recollection" Law & Human Behavior @ 203 also see Kentucky v Stincer and Snyder v Mass. 291 U.S. 97

Child sexual abuse is an extremely serious charge and conviction usually means years.

perhaps a lifetime in jail; The seriousness of the offense and the devastating consequences of conviction should make the courts and prosecutors more, not less, determined to extend the full panoply of Constitutional protections to all defendants.

The sixth Amendment requires the defendant be present at all stages of the proceedings when witnesses give testimonial statements. It is essential that defendants be permitted to cross-examine the child witness regarding who else has questioned them and if coercion and leading questions were used. Seeing they are too young to understand coercion or leading questions it is imperative to be present when this questions are being asked so the childs truth is told see (exhibit C). It is necessary to call additional witnesses or expert to testify at a competency hearing to determine what if any effect suggestive questioning may have had on the childs ability to recollect events accurately. Many child abuse experts have commented that a large percentage of allegations of child sexual abuse are false. A precise tally of false accusations is impossible without the divine omniscience required to know for certain which allegations are true and which are false. It does seem certain, however, that the portion of these allegations which are false is high and is growing.

In State v Maryland 110 S Ct. 3157 we see were integrity of the factfinding process requires face to face confrontation, because requiring an accuser to state the accusations in the live presence of the accused profoundly impacts upon the search for truth... The integrity of the factfinding process requires face-to face confrontation to the same degree, not less, when the fact witness is a child witness, who is highly susceptible to pretrial and trial influences via interviews and questioning.

Confrontation is the "greatest legal engine ever invented for the discovery of truth" Kentucky v Stincer 482 US 730, 736. The court has held that the right to confrontation is violated by the use of hearsay [unless] the defendant is unavailable and the testimony is [reliable]. Ohio v Roberts 448 US 56, 65-67. The reliability must rise to the same level of trustworthiness that would accompany the testimony if it were fully subjected to the exercise of the right to confrontation Id@ 65. Accordingly the court has held that exceptions to the rule against hearsay satisfy the right to confrontation only when they are "firmly-- rooted in our jurisprudence." Bourjaily v U.S 483 US 171 In Ohio v Roberts 448 US 56 Justice Blackmun. stated [T]he absence of [proper] confrontation at trial "calls into question the ultimate integrity of the fact finding

process "[T]he right to be confronted with the witness against him in their testimony comes to us on faded parchment" with a lineage that traces back to the beginning of Western legal culture... In Schneckloth v Bustamonte 412 US 218 the court contrasted the prophylactic nature of the 4th Amendment protections with: those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in a derogation of that model leaves open the possibility that the trial reached an unfair results precisely because all the protections specified in the constitution were not provided. Id @ 241 The integrity of the factfinding process is the adversary system's ultimate "quality control" mechanism. When the system possesses the requisite integrity in its guilt-innocence determination process, it enjoys the highest possible assurance of both "the accuracy of the factfinding" and the elimination of "the clear danger of convicting the innocent". Brown v Louisiana 447 US 323.

The court system has recognized that certain aspects of the 5th, 6th, 14th Amendment were designed by the framers to ensure the integrity of the factfinding process. ie

Linkletter v Walker 381 US 618 (application of a right that goes to the integrity of the factfinding process) No greater component of the adjudicating process has received a greater endorsement from the court concerning its contribution to this integrity, than the right to confrontation eg Kentucky v Stincer 482 US 730, Ohio v Roberts 448 US 56, Pointer v Texas 380 US 400. Whenever there will be a conflict of testimony, the factfinding process turns upon the credibility of the fact finding. Coy v Iowa 108 S Ct @ 2802.
The integrity of the factfinding process requires that testimony being received in the presence of factfinder out of formal courtroom setting be done under strict statue (see exhibit B 11§3511)

State courts cited the use of "blatantly leading" questions as a factor which militated against a finding that the child's statements were reliable. This factor is related to the [preconceptions] of the interrogator. The danger of leading questions posed by an interviewer with preconceptions of what the child should be disclosing is that the questioning may create a memory of an event which never occured. Research shows adults, as well as children, are susceptible to suggestive. Eg Loftus, Miller & Burns, Semantic Integration

of verbal information into a visual memory 4 J. Experimental Psychology: Human Learning and memory 19 (1978) In a setting (which is "high pressure" to the child, especially a young one, a strong biased interviewer can shape a child's response by a method called "successive approximation" Simply put, this means reinforcing or rewording [rewording] the child, through smiles, hugs or statements like "Good girl ... don't you feel better now... or that's the way, for statements leading up to and finally including those the interviewer wants to hear. (As in case at hand interviewer said child didn't know truth he had to draw it out by use of same question asked multiple times until he got the truth). Questioning is a factor which can negate the spontaniety which justifies confidence in the trustworthiness of the statement

Videotaping provides an excellent means of providing circumstantial guarantees of reliability and truthfulness as long as it is done via state and/or Federal statues or guide lines and Constitutional guarantees. The state of Delaware saw all these arguements listed above and to solve or eleminate any wrongful actions incorporated into the Delaware Rules of Evidence such a statue that would protect both the defendant and the alledged victim the statue is title 11 § 3511.

That not only dictates videotaped depositions but [all] procedures for child witnesses who are taped. [see exhibit B] However to protect these rights and guarantee voluntarism, truthfulness, accuracy and non coercion or leading questions they must be followed by all state agencies and prosecutorial people using them for prosecution of an individual.

Attorney General Carl C Danberg said in an interview Sept 22 2006 that "It is disappointing when any law enforcement officer fails to live up to the confidence placed in them and violates the trust of the public" This was said because a police officer decided that he was above the law and didn't have to follow procedures. I only hope these procedures are not meant for everyone except his own people. As far as jurisdiction in Carey v Piphus 435 US 247 98 SCt 1042 it says when defendant argues procedure violations of Constitutional violations he is entitled to damages under 1983 even if he doesn't and defendant is not seeking a wrongfull conviction. also see 6 section of Act 17 Stat 15 42USC 1986

I/M James St. Louis Jr.
SBI# 446518 UNIT MHU 22
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

UNITED STATES POSTAGE
02 1A $ 04.20[0]
0004608975 NOV 04 2006
MAILED FROM ZIP CODE 19977

legal mail

legal mail

Clerk
U.S. District Court
Lockbox 18
844 N. King Street
Wilmington, De 19801

probably no more than seven to eight minutes.

Q And you say she consented. Was this a written consent or oral consent?

A It is a signed consent, yes.

Q Was it explained to her what was going to be done?

A As far as the interview?

Q Yes.

A Yes.

Q And she had no problems with that?

A I don't recall any at all.

Q You mentioned that the others could watch the video-taped interview on a monitor?

A Yes, sir.

Q Who was watching, if anybody?

A The people present that day were Officer Wilson from the Laurel Police Department; Lauren Hatcher, an investigator with the Division of Family Services; and Mrs. Withers.

Q Do you know who was operating the camera?

A No, sir, I do not.

Q You mentioned that you talked in terminology that children could understand as far as the sexual



exhibit A

areas that are covered up, these are the areas where nobody should touch.

Once we established about the private areas of the body, I simply ask the child, "Has anybody ever touched you in one of these private areas of your body?" It is at that point that the child says whatever, you know, if they are going to disclose. We don't make children talk. We don't force children to talk. We don't name names. We don't lead or suggest. It is up to them to tell their story.

Q At any point, do you take a break in the interview?

A Yes. Depending on -- again, everyone is different. We take a break. I let the child draw something. I go over to the multi-disciplinary team, social worker, police officer, prosecutor, and ask them, "What else do you want to know?" Again, they have all their information when they walk out of there that day, again, so that the child doesn't have to be re-interviewed.

Q Now, you indicate that there is a camera running so the people can see what is going on in the next room. Is the interview recorded?



exhibit A

(d) Nothing in this section shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in § 3508 of this title.

(e) As used in this section, "complaining witness" shall mean the alleged victim of the crime charged, the prosecution of which is subject to this section. (60 Del. Laws, c. 257, § 1; 66 Del. Laws, c. 269, § 6; 71 Del. Laws, c. 285, § 2.)

**§ 3510. Admissibility of certificate of title in criminal proceedings involving motor vehicles.**

In any criminal proceeding in which ownership, possession or use of a motor vehicle is an issue, a certified copy of the certificate of title on file with the Division of Motor Vehicles shall be admissible as proof of ownership of the motor vehicle. (64 Del. Laws, c. 276, § 1.)

**§ 3511. Videotaped deposition and procedures for child witnesses.**

(a) In any criminal case or hearing on delinquency, upon motion of the Deputy Attorney General prior to trial and with notice to the defense, the court may order all questioning of any witnesses under the age of 12 years to be videotaped in a location designated by the court. Persons present during the videotaping shall include the witness, the Deputy Attorney General, the defendant's attorney and any person whose presence would contribute to the welfare and well-being of the witness, and if the court permits, the person necessary for operating the equipment. Only the attorneys or a defendant acting pro se may question the child. The court shall permit the defendant to observe and hear the videotaping of the witness in person or, upon motion by the State, the court may exclude the defendant providing the defendant is able to observe and hear the witness and communicate with the defense attorney. The court shall ensure that:

(1) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(2) The recording equipment was capable of making an accurate recording, the operator was competent to operate such equipment and the recording is accurate and is not altered;

(3) Each voice on the recording is identified;

(4) Each party is afforded an opportunity to view the recording before it is shown in the courtroom.

(b) If the court orders testimony of a witness taken under this section, the witness may not be compelled to testify in court at the trial or upon any hearing for which the testimony was taken. At the trial or upon any hearing, a part or all of the videotaped deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence. If only a part of a deposition is offered in evidence by a party, an adverse party may require the party to offer all of it which is relevant to the part offered and any party may offer other parts. Objections to deposition testimony or evidence or parts thereof and the grounds for the objection shall be stated at the time of the taking of the deposition.

(c) The witness need not be physically present in the courtroom when the videotape is admitted into evidence.

(d) The cost of such videotaping shall be paid by the court.

(e) Videotapes which are part of the court record are subject to a protective order of the court for the purpose of protecting the privacy of the witness. (65 Del. Laws, c. 109, § 1; 70 Del. Laws, c. 186, § 1.)

**§ 3512. Presence of victims.**

Any victim or the victim's immediate family shall have the right to be present during all stages of a criminal proceeding even if called upon to testify therein, unless good cause can be shown by the defendant to exclude them. (67 Del. Laws, c. 232, § 1; 70 Del. Laws, c. 186, § 1.)

**§ 3513. Hearsay exception for child victim's or witness's out-of-court statement of abuse.**

(a) An out-of-court statement made by a child victim or witness who is under 11 years of age at the time of the proceeding concerning an act that is a material element of the offense relating to sexual abuse, physical injury, serious physical injury, death, abuse or neglect as described in any felony delineated in subpart A, B or D of subchapter II of Chapter 5 of this title, or in any of the felonies delineated in § 782, 783, 783A, 1102, 1108, 1109, 1111 or 1112A of this title or in any attempt to commit any felony delineated in this paragraph that is not otherwise admissible in evidence is admissible in any judicial proceeding if the requirements of subsections (b)-(f) of this section are met.

(b) An out-of-court statement may be admitted as provided in subsection (a) of this section if:

(1) The child is present and the child's testimony touches upon the event and is subject to cross-examination rendering such prior statement admissible under § 3507 of this title; or

(2)a. The child is found by the court to be unavailable to testify on any of these grounds:

1. The child's death;

2. The child's absence from the jurisdiction;

3. The child's total failure of memory;

4. The child's persistent refusal to testify despite judicial requests to do so;

5. The child's physical or mental disability;

B

Q What was your previous employment before coming to CAC?

A I am a retired Delaware State Police Trooper. I had twenty years with them. During that police career, I spent approximately five years doing child-abuse investigations relating to children. I also supervised that Unit for another two years. Most of my police career was in some facet of criminal investigation.

Q Did you do anything after being a police officer and before you became the interviewer at the CAC?

A Yes. I taught public education, elementary education, for two years after I retired. I realized after two years I was not meant to be a school teacher for lack of patience. I then took a job with the Division of Family Services as a special investigator investigating allegations of abuse for them, as well, before I was hired by the Children's Advocacy Center.

Q And while you have been associated with the Children's Advocacy Center, have you had any training focussing on interview techniques with children?

A In the two years I have been employed with



exhibit C1

A About an hour, yes, sir.

Q Do you know whether she went to the bathroom before the tape began?

A I don't know. I don't remember.

Q As regards a hand touching private parts, whether the father's hand touched the private parts, did the child initially say "No" to that?

A I believe she did, yes, sir.

Q And then you rephrased the question?

A In some fashion, yes. I don't exactly remember how I rephrased it, but I did ask a second time, yes, sir.

Q So you, in effect, didn't take her "No" for an answer at that point?

A My recollection is that she was somewhat confused by the question itself.

Q Well, you wanted to follow up? "No" was not a satisfactory answer to you?

A In an interview like this, I am constantly assessing the body language, and that is what that first five to seven minutes is, an assessment of their skills. I think that happened fairly late in the interview or at least well into it, so I felt I had a



exhibit C

offered in 3507, Ms. Withers, is there anything that you would like to say that hasn't already been said?

MS. WITHERS: No. I think the issue has been covered. I certainly did not detect any issues regarding voluntariness of the statement during voir dire by Ms. Dunn of Ashley Graham.

THE COURT: Ms. Dunn?

MS. DUNN: Your Honor, we do think there was an indicia of involuntariness that was established on voir dire.

THE COURT: In what way?

MS. DUNN: The witness seemed to indicate she did not want to be at that second meeting. No one told her that her statement was going to be video-taped or taped, which we think is against public policy. Everybody who is being taped should be informed, regardless of age.

She was asked to respond to specific questions instead of being left to spontaneously relate incidents or any facts that related to the subject matter of those meetings. We just think for an eight-year-old child that these indicia are more intense the younger the age, and it could have






pretty good read of this child. I don't think that she understood what I was asking her, really. (not spontaneous)

Q That's what you thought?

A That's my opinion, yes.

Q But she said "No"?

A Yes.

Q One word, "No"; is that correct?

A That's what she said, yes.

MR. HALLER: Thank you.

MRS. WITHERS: I have no questions at this time. I will need to recall him later.

THE COURT: You may step down.

(Witness steps down.)

THE COURT: Call your next witness, please.

MRS. WITHERS: Beth Fitzgerald.

Whereupon,

BETH KELLY FITZGERALD

was called as a witness by and on behalf of the State of Delaware and, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MRS. WITHERS:

Q Good afternoon.



C